LUCILLE POOLE, BY HER NEXT FRIEND, AND JESSIE POOLE, PLAINTIFFS-APPELLANTS, v. THE TWENTIETH CENTURY OPERATING COMPANY, INCORPORATED, A BODY CORPORATE, AND JACK WEINER, DEFENDANTS-RESPONDENTS.

Submitted May 27, 1938—Decided September 16, 1938.

For the appellants, *Robert J. McCurrie.*

For the respondents, *David E. Feldman* (*Julius B. Cohen,* on the brief).

The opinion of the court was delivered by

HEHER, J. In our view the nonsuit was erroneous.

There was evidence tending to establish the following matters of fact: The Newark Terminal station of the Central Railroad Company of New Jersey fronts on Broad street. There is a safety isle directly in front of the station building. It parallels the trolley rails for a distance of approximately one hundred and ten feet. Its length—so the proofs disclose—substantially corresponds with the frontage of the station building. Accompanied by her seven-year-old daughter, the plaintiff Jessie Poole left the railroad station, intending to board a trolley car at the safety isle. She observed a trolley car receiving and discharging passengers at the northerly end of the safety isle. Proceeding to the curb at a point opposite the standing trolley car, she stopped for traffic observations. A few feet to her left, near the curb, she found a passenger-carrying bus also at a standstill, headed north. Traffic in a northerly direction was halted at this point. The bus driver gave her a signal to proceed toward the safety isle, and, holding the child by the hand on her right, she set out to do so. The point of crossing was "in line with the north end of the safety isle." Looking to the south as she walked, she found a standing automobile to the left of the bus, headed in the same direction. Further observation in that direction

as she continued on disclosed no approaching vehicle until she had "cleared" the automobile, when defendants' taxicab suddenly, and without warning, came through the intervening space from the south, "traveling fast." She quickly drew back, pulling the child with her, but the taxicab came to a stop with the rear right wheel resting on the child's foot. She also received a glancing blow. Tire skid marks on the highway indicated that the speeding taxicab had been brought to a stop by the quick application of the brakes. The adult plaintiff testified, without objection, that the taxicab "seemed to come from nowhere." And the bus driver, who was deemed a hostile witness, testified, also without objection, that the taxicab "was traveling very fast * * * was going fast for traffic." While in some doubt, he "thought" there was a crosswalk at this point. The collision occurred at five-thirty P. M., when traffic was at its peak on one of the busiest of Newark's thoroughfares. Plaintiffs had traversed about two-thirds of the distance between the curb and the safety isle when the collision occurred.

Generally, vehicular operators and pedestrians have a common right to the use of a public highway. Such rights are necessarily relative. In their very nature, they are mutual and co-ordinate. Their reasonable enjoyment imposes correlative, incidental restraints upon the freedom of action of others; and they are in turn qualified by the same considerations where the exercise of like rights by others are involved. Each is under a duty to respect the lawful rights of others, whether arising by statute or otherwise, and to use care commensurate with the risk of danger in the particular circumstances. And the principle is here applicable that one exercising his lawful rights at a place where the exercise of like rights by others may put him in peril, is obliged to use such care for his own safety as a reasonably prudent man would employ under like circumstances. *Newark Passenger Railway Co.* v. *Block,* 55 *N. J. L.* 605; *McGrath* v. *North Jersey Street Railway Co.,* 66 *Id.* 312; *Work* v. *Philadelphia Supply Co.,* 95 *Id.* 193; *Sakos* v. *Byers,* 112 *Id.* 256.

If the evidence given by the adult plaintiff be credited, she was justified, at the time she proceeded across the highway, in the assumption that traffic had halted to permit of the passage of pedestrians to the standing trolley car, and, by the same token, the operator of the taxicab was reasonably put upon notice that pedestrians would make such use of the highway. The trolley car was receiving and discharging passengers at the end of the safety isle—a natural place in the circumstances; and the bus and motor vehicle to her left were stationary. In that situation, it was reasonably to be anticipated that intending passengers would use the highway to reach the trolley car; and so the operator of the taxicab was under a duty to make effective observation and use reasonable care for the protection of such users of the highway. More particularly, it was incumbent upon him to have his vehicle under such control as was required in the exercise of due care for the safety of pedestrians passing to and from the trolley car. *Tischler* v. *Steinholz*, 99 *N. J. L.* 149; *Stern* v. *Stulz-Sickles Co.*, 109 *Id.* 415; *McConachy* v. *Skalerew*, 113 *Id.* 17. Moreover, article XI, section 3 (b) of the Traffic act of 1928 (*Pamph. L., pp.* 721, 740; *Rev. Stat.* 1937, 39:4-40) enjoins the operator of a vehicle passing a street car stopped in a safety zone, for the purpose of receiving or discharging passengers, to "proceed past such car at a speed not greater than is reasonable and proper and with due caution for the safety of pedestrians."

By a motion for a nonsuit, the defendant admits the truth of plaintiff's evidence, and the validity of every factual inference favorable to plaintiff that is fairly deducible therefrom, but denies their sufficiency in law. In such situation, it is not the province of the court to weigh and appraise the evidence; it must accept as true all the evidence tending to establish the pleaded cause of action, and reject the rest. And where fair-minded men might honestly differ as to the inferences to be drawn from the established facts, the question is one for the resolution of the determinators of the facts. If negligence may reasonably and legitimately be deduced

from the evidence, it is the function of the jury to say whether it ought to be inferred. *Garvey* v. *Public Service, &c., Transport,* 115 *N. J. L.* 280; *Sakos* v. *Byers, supra; Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *Id.* 487; *Lipschitz* v. *New York and New Jersey Produce Corp.,* 111 *Id.* 392; *Newark Passenger Railway Co.* v. *Block, supra; Yates* v. *Madigan,* 112 *Id.* 443; *affirmed,* 114 *Id.* 258; *Work* v. *Philadelphia Supply Co., supra.*

And it is the settled rule that a foot-passenger is justified in assuming, until the contrary appears, that vehicular operators will observe all statutory commands designed to advance the public safety, and otherwise exercise reasonable care in the use of the highway. *Niles* v. *Phillips Express Co.,* 118 *N. J. L.* 455; *Clarkson* v. *Ley,* 106 *Id.* 380; *Venghis* v. *Nathanson,* 101 *Id.* 110; *Tischler* v. *Steinholz, supra; Stern* v. *Stulz-Sickles Co., supra.*

And so the trial judge erred in his ruling that there was no evidence to sustain a finding of the non-observance of duty charged against the defendants, and that the adult plaintiff's conduct indisputably bespoke negligence. It suffices to add that the question of contributory negligence in cases such as this is, in a special and peculiar sense, one that calls for the experienced judgment of the triers of the facts, guided by the apposite legal principles. *Sakos* v. *Byers, supra; Lipschitz* v. *New York and New Jersey Produce Corp., supra; Fox* v. *Great Atlantic and Pacific Tea Co.,* 84 *N. J. L.* 726; *Yates* v. *Madigan, supra; Poling* v. *Melee,* 115 *Id.* 191; *Hamilton* v. *Althouse,* 115 *Id.* 248; *McConachy* v. *Skalerew, supra.*

Judgment reversed, and a *venire de novo* awarded.

*For affirmance*—CASE, BODINE, DONGES, HETFIELD, DEAR, WELLS, JJ. 6.

*For reversal*—THE CHANCELLOR, HEHER, PERSKIE, PORTER, WOLFSKEIL, RAFFERTY, WALKER, JJ. 7.