208 N.J. Super. 88 (1984)
504 A.2d 1226
RONALD E. TORNQUIST AND CAROL TORNQUIST, HIS WIFE, PLAINTIFFS,
v.
ROBERT T. PERKOWSKI AND GAIL R. MOTASKI, DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
Decided November 15, 1984.
*91 Fredric F. Azrak for plaintiffs.
Virginia D. Messing for defendants (Robert J. Casulli, attorney).
MacKenzie, J.S.C.
On December 20, 1980, plaintiff Carol Tornquist (Carol) was a passenger in a vehicle operated by her husband, plaintiff Ronald Tornquist (Ronald) on the Newark-Pompton Turnpike in Pompton Plains, New Jersey. Ronald had brought his vehicle to a stop and was waiting to make a left turn onto West Franklin Avenue when the car was struck in the rear by a vehicle owned and operated by defendant Robert Perkowski (defendant). Both plaintiffs sustained personal injuries as a result of the accident. They retained an attorney who instituted *92 suit on their behalf.[1] Each plaintiff asserted a claim for bodily injury and a per quod claim.[2]
At trial, Ronald contended that defendant had failed to make proper observations and had failed to properly control his vehicle. Defendant countered with assertions that Ronald had not signalled his intention to make a left turn. The jury was instructed to find whether either or both drivers had been negligent. It was further instructed to apportion liability between the two if it found that each had proximately caused the accident.[3]
*93 This case presented two previously unresolved issues to the court. The first was whether the jury should be given an "ultimate outcome" charge[4] with respect to each plaintiff's claim for loss of consortium. The second question was whether the jury should be instructed that the damages awarded on either or both per quod claim(s) should be reduced by the percentage of negligence it might attribute to Ronald. This opinion supplements the oral decision given at the charge conference.

I.

The Ultimate Outcome Charge.
An "ultimate outcome" charge ordinarily is required when a plaintiff and one or more defendants may be deemed to have been causally negligent. Roman v. Mitchell, 82 N.J. 336 (1980).[5] The Supreme Court has determined that a jury will better fulfill its fact-finding function when it understands the effect that its apportionment of liability will have upon its damage awards. Ibid. A jury should have such an instruction so that its deliberations will not take place in a vacuum or be based upon a faulty understanding of the effects of its allocation of negligence. Thus, a jury should be given an "ultimate outcome" instruction with respect to the effect that the percentage of negligence ascribed to a party will have upon his damage award.
Providing the jury with an appropriate instruction for Ronald's and Carol's bodily injury claims is not a problem. The *94 language of Model Jury Charge (Civil) § 8.25 may be altered readily to conform to the facts and the applicable law. Before tailoring the charge, the court must decide how to evaluate plaintiffs' per quod claims. Should Carol's per quod recovery be reduced by the percentage of negligence which the jury attributes to her husband? Should the jury be told to reduce Ronald's recovery upon his per quod claim by the percentage of negligence that it attributes to him?
In order to answer the questions presented, the court has had to consider the characteristics of per quod claims and to analyze the unresolved dispute about the nature of a derivative action. The court has also had to apply principles of contributory[6] and comparative negligence,[7] the doctrine of interspousal tort immunity and the reasons for its abrogation,[8] and the rules providing for contribution among joint tortfeasors.[9] All of these rules and policies affect the resolution of the issue.

II.
The Definition and Characteristics of a Per Quod Claim.
An action "per quod" is a suit by a spouse[10] for compensation for the loss of the other spouse's aid, society and conjugal fellowship resulting from the causative fault of another.[11] *95 See Ekalo v. Contructive Serv. Corp. of America, 46 N.J. 82 (1965); Zalewski v. Gallagher, 150 N.J. Super. 360 (App.Div. 1977); Schuttler v. Reinhardt, 17 N.J. Super. 480 (App.Div. 1952). Both husband and wife may sue for loss of consortium of the other.[12]
An action for loss of consortium has its own statute of limitations. See, e.g., Madej v. Doe, 194 N.J. Super. 580 (Law Div. 1984). The cause of action for loss of consortium does not necessarily accrue at the same time as the other spouse's action for bodily injuries. Consequently, the statute of limitations for a per quod claim need not begin to run at the same time as the statute of limitations for a not begin to run at the same time as the statute of limitations for a bodily injury claim. See, e.g., Goodman v. Mead Johnson & Co., 534 F.2d 566 (3 Cir.1976).
A married woman's per quod claim generally ought to be joined with her husband's suit for bodily injuries. Ekalo v. Constructive Serv. Corp. of America, 46 N.J. 82 (1965). The Ekalo Court had articulated "a new rule requirement that all claims by husbands and wives for physical injuries and consortium losses resulting from negligent conduct by another must be joined so that they may be tried before a single jury or *96 before a single judge if a jury be waived." Id. at 92.[13] However, there are exceptions to this rule. In Neely v. Kossove, 198 N.J. Super. 503 (Law Div. 1984), a trial court found that a married woman could institute a suit for loss of consortium after her husband had settled his claim for bodily injuries against defendant.[14] Similarly, the entry of a judgment of "no cause of action" against one spouse would not bar the other spouse's claim. Cf. Orr v. Orr, 36 N.J. 236, 239 (1961) (a denial of recovery to a child for injuries received will not be res judicata in the parent's subsequent suit for consequential damages). In addition, both spouses' claims for personal injuries need not be joined in one suit if it would "require each spouse who sustained personal injuries in an accident to retain the same attorney in order to bring a single action." Scott v. Richstein, 129 N.J. Super. 516, 518 (Law Div. 1974).[15]
An action for loss of consortium has been described as a "separate" and "independent" claim. Ekalo v. Constructive Serv. Corp. of America, 46 N.J. 82 (1965); Orr v. Orr, 36 N.J. 236 (1961); Wimmer v. Coombs, 198 N.J. Super. 184 (App.Div. 1985); Neely v. Kossove, 198 N.J. Super. 503 (Law Div. 1984); Madej v. Doe, 194 N.J. Super. 580 (Law Div. 1984). Cf. Amato *97 v. Amato, 180 N.J. Super. 210 (App.Div. 1981) (a "separate and ... personal right"). Such actions are also known as "derivative actions." See, e.g., Portee v. Jaffee, 84 N.J. 88 (1980) (parent and child consortium action); Orr v. Orr, supra (parent and child consortium action; Wimmer v. Coombs, 198 N.J. Super. 184 (App.Div. 1985); Neely v. Kossove, 198 N.J. Super. 503 (Law Div. 1983); Scolaro v. Marlatt, 193 N.J. Super. 452 (Law Div. 1983); Scott v. Richstein, 129 N.J. Super. 516 (Law Div. 1974); cf. Patusco v. Prince Macaroni, Inc., 50 N.J. 365 (1967). It is difficult to define a "separate and independent derivative action." The court's definition difficulties were compounded by the diversity of descriptions of derivative actions for loss of consortium which have been provided by the Supreme Court. The court has ruled that a derivative action for loss of consortium merely arises out of the same operative facts and circumstances which give rise to a "direct" or "main" claim for personal injuries, from which the action per quod is "derived." Orr v. Orr, 36 N.J. 236 (1961). Conversely, the court has also instructed that a derivative action for loss of consortium is barred if the owner of the "main" or "direct" claim may not recover for her injuries as a matter of law. See Patusco v. Prince Macaroni, Inc., 50 N.J. 365 (1967). Most recently, the Supreme Court has implied that a parent's recovery on a cause of action for the loss of a child's consortium might be reduced by the percentage of negligence attributed to the child by the finder of fact. Portee v. Jaffee, 84 N.J. 88 (1980).
This court has analyzed the cases in which the Supreme Court has suggested that one individual's legal disability might bar or limit a non-negligent person's recovery. None is dispositive of the issue presented here. Therefore, the court concludes that the better rule is to decline to instruct the jury to reduce Carol's recovery by the percentage of negligence, if any, attributed to Ronald.
*98 In Portee v. Jaffee, the Supreme Court cited the Comparative Negligence Act[16] when it ruled that a parent's recovery for negligent infliction of emotional distress attributable to witnessing her son's accidental death[17] would be reduced by the percentage of negligence attributed to the boy by the jury. The Court determined that this result was proper because the boy's own recovery would have been reduced by the percentage of negligence for which the jury found him responsible. In the words of the Court, "[t]o allow a plaintiff seeking damages for emotional injuries to recover a greater proportion than the injured party would surely create liability in excess of defendant's fault." Id. at 102.
Although Portee focused upon parent and child actions for negligent infliction of emotional distress, it did refer in passing to actions for loss of consortium. In footnote six of the opinion, the Court suggested that "[t]he common law action for loss of consortium may be perceived as a claim for negligently inflicted emotional injury." Id. at 98 citing Ekalo, 46 N.J. at 86-91. This intimates that a recovery for loss of consortium might be subject to the same reduction rules as a recovery for negligently inflicted emotional injury. However, this court finds that sound legal principles and public policy considerations *99 militate against extending the Portee rule[18] to spousal claims for loss of consortium.
Notwithstanding the suggestion in Portee to the contrary, an action for loss of consortium is quite different from an action for the negligent infliction of emotional distress. Each is intended to redress a different injury. In Zalewski v. Gallagher, 150 N.J. Super. 360 (App.Div. 1977), the Appellate Division expressed the rationale underlying the recognition of a married woman's right to bring an action for loss of consortium as follows:
[a] wife is entitled to the services of her husband in attending to his household duties, to his companionship and comfort and to his consortium, that is, marital relations with him [, and s]he is entitled to fair and reasonable compensation for any loss or impairment of her husband's services, society or consortium.... [At 372]
However, an action for negligent infliction of emotional distress only provides compensation for witnessing a painful or shocking experience which may give rise to a cause of action for loss of consortium. By definition, recovery for negligent infliction of emotional distress does not contemplate or embrace compensation for loss of services or companionship. Consequently, actions for negligent infliction of emotional distress and actions for loss of consortium are more properly perceived as two different remedies for two different types of injuries.
Even if the court assumed for the sake of argument that a parent's cause of action for loss of a child's consortium is identical to a parent's cause of action for negligent infliction of emotional distress, it is clear that neither of these claims is the same as a spouse's claim for loss of consortium. Claims on behalf of parents and children do not seek redress for the loss of conjugal fellowship. This indicates that consortium claims made on behalf of parents and children and actions brought for *100 spouses should be evaluated separately. The law does not forbid the courts to treat parent-child consortium claims and interspousal claims differently. In fact, "[t]he law has always been most solicitous of the husband and wife relationship, perhaps more so than [of] the parent and child relationship." Ekalo, supra, 46 N.J. at 92. For these reasons, this court finds that the dicta in Portee does not control the disposition of this action.
More than a decade before Portee was decided, the Supreme Court severed a husband's common-law right to sue for his wife's medical expenses from his right to recover for loss of her consortium. Patusco v. Prince Macaroni, Inc., 50 N.J. 365 (1967). The Court held that the right to recover medical expenses belonged to the spouse who incurred them, and that the other spouse's contributory negligence did not affect the injured spouse's right to seek compensation for her medical costs. Ibid.
Although the effect of one spouse's contributory negligence upon the other's action for loss of consortium was not before the Court, the issue was addressed in the following language:
We should stress we are [not] speaking ... of [a] husband's claim for loss of consortium. The law recognizes a man's relational interest in his wife and gives him a cause of action against one who negligently invades that interest. Although the husband's consortium claim is thus distinct from the wife's, it will fall if the wife was contributorily negligent. ... [Id. at 368]
Thus, the Patusco Court found that one spouse's legal disability (contributory negligence) would bar the other spouse's (derivative) claim for loss of consortium.[19]
*101 Patusco also is distinguishable from the instant action. When Patusco was decided in 1967, the Legislature had not yet eschewed contributory negligence principles in favor of a comparative negligence law.[20] The adoption of the Comparative Negligence Act had a significant effect upon the common law of this State. One reason is that when New Jersey adopted, in large part, the Wisconsin Comparative Negligence Law in 1973, "[T]he chosen package included not only the Wisconsin statute but also that State's judicial interpretations." Rawson v. Lohsen, 145 N.J. Super. 71, 77 (Law Div. 1976), citing 2A Sutherland, Statutory Construction (4 ed. 1973), § 52.02 at 329; accord Warshany v. Supermarkets General Corp., 161 N.J. Super. 515 (Law Div. 1978). Since New Jersey adopted the "gloss" that Wisconsin's judiciary had put upon its comparative negligence statute, New Jersey perforce adopted Wisconsin's application of comparative negligence principles to the issue presented here.
In 1972, the Wisconsin Supreme Court affirmed a trial court's ruling that one spouse's cause of action for loss of consortium was not limited or barred by the contributory negligence of the other spouse. Schwartz v. City of Milwaukee, 54 Wis.2d 286, 195 N.W.2d 480 (Sup.Ct. 1972). The Schwartz court reviewed several Wisconsin cases which had discussed the nature of per quod claims and the legal fictions which had been developed by various courts to resolve the problems which they presented. Recognizing a conflict in the rationale of its prior decision, the court undertook to eliminate that conflict as follows:
[T]he concept of consortium was the foundation of separate rights in both husband and wife. Each can recover for his loss without there being a double recovery. This view emerged in Fitzgerald v. Meissner & Hicks, Inc., [citation omitted] ... We pointed out the wife's action was derivative only in the sense it arose out of or was occasioned by an injury to her husband. This is not the *102 usual meaning of the word "derivative" and it might be more accurate to say a wife's damage was dependent upon the husband's injury and her cause of action must include the common factor of the accident and injury to her husband. Since the cause of action for consortium occasioned by an injury to the other spouse is a separate cause of action which never belonged to the other spouse, it is not subject to the defenses which are available against the other spouse's cause of action. A cause of action for loss of consortium is, of course, subject to the defense of contributory negligence of the owner of the cause of action ... We see no difference between a cause of action by a spouse for an injury personal to him caused by the negligence of the other spouse and a cause of action for loss of consortium suffered by a spouse arising out of an injury to the other spouse. In both cases, the causes of action are separate and involve injury to the one seeking to recover and only his negligence, if any, should be a defense. [195 N.W.2d at 484-485]
Thus, the Wisconsin rule at the time New Jersey adopted its comparative negligence law[21] was inconsistent with Patusco.
A second difference between Patusco and the case at bar is that Patusco was decided when the law prohibited spouses from suing one another for injuries sustained in the course of the marital relationship.[22] At that time, the law also did not allow a tortfeasor to sue a spouse for contribution to a judgment rendered in favor of the other spouse. Patusco, 50 N.J. at 369, n. 1. A tortfeasor's right to seek contribution for a joint tortfeasor-spouse was recognized in Immer v. Risko, 56 N.J. 482 (1970). See also Zweifel v. Morgan, 145 N.J. Super. 35 (App.Div. 1976). When the Court handed down the Patusco decision in 1967, the notion that a spouse could be accountable *103 to the other was innovative but one whose time had not yet come.
Three years later, in Immer v. Risko, the Supreme Court ruled that spouses may sue one another for injuries negligently inflicted in an automobile accident during coverture. Immer also made spouses accountable to third parties by enabling a tortfeasor to sue a spouse for contribution to a judgment awarded to the other spouse.
When the Immer court abrogated the doctrine of interspousal tort immunity, it did so because it found that the rule was no longer justifiable in modern society. The rationale was expressed as follows:
[T]he original basis for the common law immunity doctrine ... the theory of legal identity of husband and wife [was deemed a] metaphysical concept [which] cannot be seriously defended today. [56 N.J. at 488, citing Long v. Landy, 35 N.J. 44, 50 (1961)]
Two other arguments which had been invoked to justify retention of the doctrine, i.e., the disruptive effect which suits would have upon family harmony and the possibility of fraudulent and collusive litigation against insurance companies, were similarly rejected. The court opined that domestic peace would not be adversely affected if circumstances were such that spouses wanted to engage in litigation. Furthermore, if they did litigate, the availability of insurance would prevent disruption of the marital relation because, in most instances, the recovery would be paid for by the insurance company. Id. 56 N.J. at 488-489. The possibility that insurance companies would be the victims of fraudulent and collusive suits was dismissed as insufficient to justify continuation of the doctrine. The Supreme Court pointed out that trial courts have the experience and ability to weed out fraudulent and collusive suits and that the rights of the many could not be abridged to prevent abuses by a few. Id. at 490, 494. Consequently, interspousal tort immunity was deemed to have outlived its usefullness and was abrogated in an automobile negligence setting.
*104 The Immer Court's analysis suggested that the dicta in Patusco regarding actions for loss of consortium does not control the outcome of this case. The abrogation of interspousal tort immunity and the advent of spousal liability for contribution remove the most persuasive justifications for the Patusco decision. Furthermore, even the Patusco Court itself found the notion, that one spouse's negligence could bar the other spouse's claim, anomalous when it noted "that the wife's carelessness should bar the husband's claim for loss of consortium is questioned academically."[23] 50 N.J. at 368. As the following discussion shows, the Supreme Court had flatly rejected this proposition in Orr v. Orr, 36 N.J. 236 (1961).
The Orr Court had ruled that a father's claim against his son-in-law for the loss of his daughter's consortium prior to her marriage was not barred even though the daughter's action against her husband for personal injuries was barred by the doctrine of interspousal tort immunity. Defendant son-in-law had argued that plaintiff-father's consortium action was barred because his right to recover was:
... derivative and dependent or incidental. He emphasize[d] this argument by contending that the right of a parent, `the holder of the consequential damage,' should rise no higher than the right of the holder of the primary claim, the infant; that unless the infant is entitled to recover, the parent cannot; and that if the infant's right is barred (in this case by marriage to respondent) the parent is also barred. [36 N.J. at 239].
However, the Supreme Court noted that:
[w]hile ordinarily the facts establishing initial liability of the defendant to the child must be proved in a parent's cause of action for consequential damages, application of the term "derivative" to such a cause of action does not thereby transform what is basically a separate cause of action into one which is dependent upon the continued existence of another.[24] [Ibid.]

*105 A.

Carol's Claim for Loss of Consortium.
The court has carefully considered the Supreme Court opinions which discuss the nature of an action for loss of consortium and other related principles or policies. The court concludes that the reasoning of the Orr and Immer courts are appropriately applied to the case at bar. If this court required the jury to reduce a non-negligent wife's recovery for loss of consortium by the percentage of negligence attributed to her husband, this court would deprive Carol of a portion of the recovery to which she is entitled only by virtue of the fact that she is married to someone who negligently caused her to sustain an injury. This result is inconsistent with the proposition articulated in Immer that spouses are accountable to each other for the infliction of injury in an automobile accident which occurs during coverture. The court declines to instruct the jury to reach such an untenable result.
Instructing the jury to reduce Carol's recovery commensurately with Ronald's negligence is also inconsistent with Orr and Ekalo. A wife is not an extension of her husband, but a separate individual. To rule that her cause of action is limited or barred by her husband's actions is to endorse implicitly the proposition that she is an extension of her husband and incapable of securing a full recovery for her own "immediate and direct" injury in her own right. See Ekalo, supra, 46 N.J. at 90. The court instead endorses Justice Schettino's declaration that neither "reason nor justice" can countenance such a result.
*106 Recognition of a wife's right to a full recovery on a claim for loss of consortium is also consistent with recent judicial thinking. See Wimmer v. Coombs, 198 N.J. Super. 184 (App.Div. 1985); Neely v. Kossove, 198 N.J. Super. 503 (Law Div. 1984); cf. Amato v. Amato, 180 N.J. Super. 210 (App.Div. 1981). These and other cases reflect a trend toward the recognition of the true "separate and independent nature" of a per quod claim.
In a conventional negligence situation involving a claim for bodily injuries, the jury would be directed to allocate the responsibility for the accident between the two drivers. The court would mold the verdict to reflect the percentage of negligence attributed to each driver. E.g., Dimogerondakis v. Dimogerondakis, 197 N.J. Super. 518, 521, n. 4 (Law Div. 1984).[25] Each tortfeasor would be liable for the full amount of the judgment. In the event any joint tortfeasor was called upon to pay more than his proportionate share, he would be able to seek contribution from the other tortfeasor(s), regardless of whether the other was married to the holder of the judgment. N.J.S.A. 2A:15-5.3; Immer v. Risko, supra; Zweifel v. Morgan, 145 N.J. Super. 35 (App.Div. 1977). In the judgment of this court, the same treatment should be accorded a judgment for damages for personal injuries. If the jury finds that both Ronald and defendant were negligent, then they would be considered joint tortfeasors within the meaning of the contribution act. Each would be liable for the total amount of the judgment and each would be able to sue the other for contribution in the event that he should be required to pay a disproportionate share of that judgment. Thus, Carol would receive the full recovery to which she is entitled from the two tortfeasors who proximately caused her injuries.
*107 For the foregoing reasons, the court concludes that the jury should not be instructed to reduce Carol's recovery on her claim for loss of consortium by the percentage of negligence, if any, which it attributes to Ronald,[26] nor would the court be obliged to mold Carol's per quod damages award by any such percentage.

B.

Ronald's Claim for Loss of Consortium.
"In New Jersey, the husband's cause of action per quod, for the loss of consortium attributable to injuries tortiously inflicted on his wife, has been long and firmly established...." Ekalo v. Constructive Serv. Corp. of America, supra, 46 N.J. at 85. The issue here is whether the jury should be instructed to reduce Ronald's recovery for the loss of his wife's consortium by the percentage of negligence, if any, which it attributes to him. The court has concluded that the jury should be so instructed.
The Supreme Court had held that "it is correct to say upon current notions of liability that the husband ought not to recover [on a claim for loss of consortium] if he himself negligently contributed to that loss." Patusco v. Prince Macaroni, Inc., supra, 50 N.J. at 368. Patusco was decided six years before the adoption of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq. Consequently, Mr. Patusco's personal per quod claim was barred in its entirety by his contributory negligence.
However, it is reasonable to presume that the result would have been different if comparative negligence principles were *108 applicable to automobile negligence actions. If 25% of the responsibility for the accident had been attributed to Mr. Patusco, the Supreme Court would have directed that his damages should be reduced commensurately with his negligence. He would not have been precluded from recovering all damages for his loss of his wife's consortium.
The Comparative Negligence Act precludes the imposition of "liability in excess of fault." See Portee v. Jaffee, supra, 84 N.J. 88, 102. To instruct the jury that defendant shall be liable for 100% of Ronald's damages for loss of consortium even if he is not 100% at fault would constitute a direction to impose liability in excess of fault. This is an untenable result.
For this reason, the jury should be instructed that Ronald's recovery on a claim for the loss of Carol's consortium must be reduced by any percentage of negligence which the jury attributes to him.
NOTES
[1] The court was concerned at the outset about the propriety of one attorney representing both plaintiffs. Until 1970, our Supreme Court "[w]as of the view, because of the conflict of interest inherent in the situation, that an attorney should not represent both the driver of a car and a passenger in an action against the driver of another car...." 91 N.J.L.J. 81 (1968) (cited in Ethics Opinion No. 156, 92 N.J.L.J. 481 (1969)). On October 8, 1970, the Supreme Court issued a new directive that "[u]ntil further order of the Supreme Court, the policy statement with reference to the representation of driver and passenger will not apply with respect to husband and wife or parent and child. The problem of common representation in such situations will depend upon the circumstances of each case." 93 N.J.L.J. 712 (1970). In Opinion No. 248, the Ethics Committee stated that one attorney may represent both spouses only when `the liability question is obvious.' 96 N.J.L.J. 93, 95 (1973).

This case presented an obvious liability situation. Plaintiff's car was struck from behind as they signalled their intention to make a left turn and awaiting an opportunity to do so. Consequently, the attorney for Ronald and Carol did not improperly undertake, at their request, to represent both of them. Subsequent events cannot relate back to the time where the court found no conflict of interest existed so as to qualify or to disqualify counsel from proceeding to trial. The jury's finding that Ronald had not been negligent, however, confirmed the court's initial impression that defendant had been exclusively at fault.
[2] A "per quod claim" is an action "per quod consortium amisit." In old pleading, [it meant] whereby he lost the company [of his wife]." Black's Law Dictionary 1028 (5 ed. 1979); see also Ballentine's Law Dictionary 939 (3 ed. 1969). An action for "loss of consortium" is "substantially the same as" an action "per quod consortium amisit." Black's Law Dictionary, supra, citing 3 Blackstone, Commentaries § 140.
[3] Carol was not negligent as a matter of law. This situation was not one of the few in which the negligence of the driver may be attributed to the passenger. See Dimogerondakis v. Dimogerondakis, 197 N.J. Super. 518, 521, n. 4 (Law Div. 1984).
[4] An "ultimate outcome" charge explains to the jury the effect that its apportionment of negligence between or among parties to the action will have upon any damages awarded to the plaintiff. See Roman v. Mitchell, 82 N.J. 336 (1980).
[5] Because this is a relatively simple automobile negligence action which involves two plaintiffs, one defendant, and a limited number of liability issues, the "exception" to the ultimate outcome charge "rule" is inapplicable here. See Roman, supra, 82 N.J. 346-347.
[6] At common law, a claimant's contributory negligence defeated his action. See, e.g., Patusco v. Prince Macaroni, Inc., 50 N.J. 365 (1967).
[7] See N.J.S.A. 2A:15-5.1, et seq.
[8] See, e.g., Immer v. Risko, 56 N.J. 482 (1970).
[9] See N.J.S.A. 2A:15-5.3.
[10] The courts of this State also have recognized a parent's right to sue for the loss of a child's company and services. Orr v. Orr, 36 N.J. 236 (1961); France v. A.P.A. Transport Corp., 56 N.J. 500 (1970). This action is also described an action for "loss of consortium" or "per quod claim." When used in this opinion, these terms refer to an action for the loss of a spouse's consortium, unless otherwise indicated.
[11] A consortium claim formerly included a husband's right to recover for the medical expenses he incurred on his wife's behalf. However, the Supreme Court has held that a married woman has the right to sue in her own name to recover the cost of her medical treatment. See Patusco v. Prince Macaroni, Inc., 50 N.J. 365 (1967), discussed infra at 100-101.
[12] It was well recognized at common law that a married man had a cause of action per quod, for the loss of his wife's consortium, against an individual who intentionally or negligently injured her. See, e.g., 1 Harper & James, Torts (1956), § 8.9 (cited in Ekalo v. Constructive Serv. Corp. of America, 46 N.J. 82 (1965)). However, "[t]he common law did not recognize any consortium action in the wife...." Id. at 86, citing 1 Blackstone, Commentaries § 442. A married woman's cause of action against someone who intentionally injured her husband for the loss of his consortium was recognized in Sims v. Sims, 79 N.J.L.J. 577 (E. & A. 1910). Fifty-five years later, the Supreme Court recognized a wife's cause of action against one who negligently caused her to lose her husband's consortium in Ekalo.
[13] This principle was adopted as R. 4:28-3(b) as part of the 1979 revision of the court rules. Pressler, Current N.J. Court Rules, Comment 4:28-3 (1979). The rule provides that "[a]ll claims by spouses for physical injury and consortium losses resulting from the same course of negligent conduct of others shall be joined in a single action and shall be deemed to have been waived if not so joined unless the court, for good cause shown, otherwise orders."
[14] The trial judge in Neely distinguished Ekalo by explaining that Ekalo was intended to "protect against the suggested danger of double recovery," and that

Payment to the injured spouse to include the non-injured spouse's loss is not likely in the instant case ... A bargain[ed]for release secured by a knowledgable insurer would not permit payment of a greater sum than the value of the claims released. Double recovery under those circumstances is non-existent. [198 N.J. Super. at 505.]
[15] This case did not involve a claim for loss of consortium.
[16] N.J.S.A. 2A:15-5.1 provides that

[c]ontributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.
[17] The seminal case in this area is Dillon v. Legg, 68 Cal.2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). The New Jersey Supreme Court has defined a cause of action for negligent infliction of emotional distress as requiring "proof of the following elements: 1) the death or serious physical injury of another caused by defendant's negligence; 2) a marital or intimate familial relationship between plaintiff and the injured person; 3) observation of the death or injury at the scene of the accident; and 4) resulting severe emotional distress." Portee, supra, 84 N.J. at 101.
[18] In Portee, the Supreme Court held that "any recovery for emotional harm resulting from perceiving the death or serious injury to another shall be reduced by the proportion of the injured party's negligence as well as, of course, any contributing negligence of the plaintiff himself." 84 N.J. at 102.
[19] The court infers this conclusion from the opinion. In 1967, New Jersey still adhered to the rule of contributory negligence. Because contributory negligence barred an action for personal injuries, Mrs. Patusco would not have been able to recover for her injuries if the jury found that she had been contributorily negligent. Because she could not recover for her bodily injuries, her husband could not recover for the further harm which flowed from these injuries. Her legal disability would bar his claim.
[20] "New Jersey considered the alternatives over a long period of time prior to selecting its own brand of comparative negligence law." O'Brien v. Bethlehem Steel Corp., 59 N.J. 114, 126-27 (1971) (concurring opinion) (cited in Rawson, supra, 145 N.J. Super. at 77).
[21] In White v. Lunder, 66 Wis.2d 563, 225 N.W.2d 442 (Sup.Ct. 1975) the Wisconsin Supreme Court decided that Schwartz was inapposite when both spouses were causally negligent. For this reason, the court redefined "derivative" and declared that "the causal negligence of the injured spouse shall bar or limit the recovery of the claiming spouse pursuant to the terms of the comparative negligence statute." White, 225 N.W.2d at 449. See footnote 23 infra and accompanying text for discussion of the limited value of the White decision.
[22] See Immer v. Risko, 56 N.J. 482 (1970) (abrogating interspousal tort immunity in automobile negligence actions); Merenoff v. Merenoff, 76 N.J. 535 (1978) (abrogating interspousal tort immunity in general).
[23] Accord White v. Lunder, 66 Wis.2d 563, 225 N.W.2d 442, 449 (Sup.Ct. 1975) ("[t]o declare both of these causes of action derivative [in the sense that the negligence of the other spouse is not attributed to the claiming spouse] might not be entirely logical.").
[24] Justice Schettino pointed out that the same tortious act may give rise to two separate causes of action and that, in general, an injury to an infant gives rise to "a cause of action in the infant, and a separate and distinct cause of action in the parent." Id. 36 N.J. at 240; citation omitted. Accordingly, the Orr Court "[a]ssumed, as it must, that the basis for [defendant-son-in-law's] liability originally existed as to [the daughter]," and ruled that "neither reason, justice nor precedent would dictate that the father's cause of action cannot be maintained." Orr, 36 N.J. at 241; citation omitted.
[25] A spousal plaintiff would, of course, have the right to release her husband (or wife) prior to trial. In that situation, a defendant would still undertake to prove that the other spouse had been more negligent than he in order to reduce his potential liability.
[26] Accord Macon v. Seaward Construction Co., 555 F.2d 1 (1 Cir.1977); Feltch v. General Rental Co., 383 Mass. 603, 421 N.E.2d 67 (1981); Fuller v. Buhrow, 292 N.W.2d 672 (Iowa Ct. 1980), overruled Goetzman v. Wichern, 327 N.W.2d 742 (Iowa Ct. 1982); Lantis v. Condon, 95 Cal. App.3d 152, 157 Cal. Rptr. 22 (Ct. 1979).