218 N.J. Super. 165 (1987)
527 A.2d 78
GERALDINE H. TICHENOR AND WAYNE TICHENOR, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
JEANNIE L. SANTILLO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 13, 1987.
Decided May 22, 1987.
*167 Before Judges PETRELLA, BILDER and SCALERA.
Methfessel and Werbel, attorneys for appellant (Mark H. Daaleman on the brief).
Marra, Gerstein & Richman, attorneys for respondents (Anthony J. Marra, Jr. on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
In this motor vehicle negligence action the jury rendered a $5,000 verdict[1] in favor of plaintiffs, but concluded that plaintiff[2] Geraldine H. Tichenor was herself 40% negligent. The judge molded the verdict and entered judgments for 60% of $2,500 plus $350 in interest on each. Plaintiffs' subsequent motion for judgment notwithstanding the verdict, or in the alternative a new trial, was granted by an order in which judgment was entered for the full monetary amount, eliminating the jury's determination of negligence attributable to plaintiff.
Defendant appeals on the ground that the judge improperly amended the jury verdict. She argues that the jury's determination that plaintiff was 40% negligent should be reinstated. Plaintiffs oppose the appeal, but argue alternatively that, even assuming the judgment is set aside so as to reinstate the jury verdict, the percentage of negligence should only operate to reduce the claim of the injured plaintiff, and not reduce the per *168 quod award. That issue was not presented to the trial judge when she molded the jury verdict.
The only evidence as to liability at the trial was given by plaintiff and through various photographs and diagrams. The facts are not unduly complicated. On October 6, 1983, at about 2:30 p.m., plaintiff was driving in a northerly direction on Main Street in Metuchen in an area where the posted speed limit is 30 miles per hour. She testified that she observed two very large Public Service trucks parked in the north-bound lane on her right hand side. Defendant Jeannie Santillo was attempting to exit a gasoline station by way of the driveway in front of the parked trucks and her automobile collided with plaintiff's vehicle. Defendant did not testify. Plaintiff testified to a statement she heard defendant make to the police that defendant could not see the road because her view was obstructed by the two Public Service trucks.
Plaintiff said that she was familiar with the gas station on that particular corner and the location of the intersecting street. She was able to observe that one driveway to the gas station was blocked and that only the other driveway was open. She first saw defendant's vehicle when it was about eight feet away. Although she slammed on her brakes, her car made contact with the left front fender of defendant's car. This caused damage to her vehicle's headlights, bumper, grill and hood. She also sustained injury to her neck.
At the end of the case plaintiffs unsuccessfully moved to strike the defense of comparative negligence. Defense counsel argued that it was the jury's function to determine credibility and pointed out that it would have the photograph to compare with the testimony. The judge noted that the jury could find that the plaintiff had not been exercising reasonable caution. It could compare her testimony about her speed with the physical evidence in the photograph.
In denying plaintiff's motion to strike the comparative negligence defense the judge said:

*169 ... the jury could conclude that the plaintiff having been familiar with this roadway and with the exits of the gas station  she said she went this way every day  and on that day seeing the trucks blocking one exit and the second truck blocking a part of the second exit, I suppose a jury might reasonably conclude that she ought to have been a little more careful in approaching and going past that second exit; that instead of going 28 miles, 25 miles per hour as she said that [was] about what she had reached as she pulled onto Main Street, that she should have been going something like 5 miles, creeping past that blockage. I think that's not  that would not be beyond the realm of reason even without the testimony of the defendant.
* * * * * * * *
... it is undisputed that one exit was fully blocked, and the second exit was partially blocked; large trucks from the photos, one can see that the roadway is not that wide, and I think a reasonable juror could conclude that she ought to have taken more care going past to make sure she wasn't going to hit someone coming out; so I will deny your motion.
On plaintiff's motion for judgment n.o.v. or for new trial, however, the judge stated that she should have granted plaintiffs' motion to strike the comparative negligence defense when it was originally made. The judge essentially concluded that plaintiff conformed to the standard of conduct of a reasonably prudent person, and that the jury could have reached no other conclusion. She therefore granted the motion for judgment n.o.v.

I
A jury's verdict is not lightly overturned. We are duty bound to give it substantial deference, and we "cannot invade the constitutional office of the jury." Wytupeck v. Camden, 25 N.J. 450, 466 (1957). Nor do we substitute our judgment for that of the initial finder of fact. Dolson v. Anastasia, 55 N.J. 2, 6 (1969). Likewise, we do not act as a "thirteenth and decisive juror," ibid., nor the seventh juror in a civil case tried by six jurors. Rather, the jury's verdict "is entitled to very considerable respect." Baxter v. Fairmount Food Co., 74 N.J. 588, 597 (1977). As stated in Carrino v. Novotny, 78 N.J. 355, 360 (1979), "a jury verdict, from the weight of evidence standpoint, is impregnable unless so distorted and wrong, in the *170 objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice."
Clearly, the duty to exercise reasonable care between persons using or about to use a public highway is mutual. Tischler v. Steinholtz, 99 N.J.L. 149, 151 (E. & A. 1923); German v. Harris, 106 N.J.L. 521, 523 (E. & A. 1930); Van Rensselaer v. Viorst, 136 N.J.L. 628, 631 (E. & A. 1948). An approaching driver is justified in assuming, until he discovers to the contrary, that all other users of the highway will exercise reasonable care. Toole v. Twentieth Century Operating Co., 121 N.J.L. 244, 248 (E. & A. 1938); Niles v. Phillips Express Co., 118 N.J.L. 455, 460 (E. & A. 1937); Goldstone v. Tuers, 189 N.J. Super. 167, 169 (App.Div. 1983); Matthews v. Nelson, 57 N.J. Super. 515, 518 (App.Div. 1959), certif. den. 31 N.J. 296 (1960). It is ordinarily for the jury to determine the standard of care of a reasonable man in automobile negligence cases. Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 483 (1969); Ambrose v. Cyphers, 29 N.J. 138, 144-145 (1959).
Here, even though plaintiff was the only person who testified on the liability aspect of the case, it was clear that she knew that two large utility trucks were parked on her right and blocked one exit of the gas station. She was familiar with that gas station and knew also that the far exit in front of the vehicles was partially blocked. Where the view of a roadway ahead is impaired by an obstruction a driver of a motor vehicle has a duty to exercise care commensurate with the risk of the hazard presented. Finley v. Wiley, 103 N.J. Super. 95, 100-101 (App.Div. 1968); Boody v. Good Bros., 31 N.J. Super. 439, 443 (App.Div. 1954), aff'd o.b. 17 N.J. 393 (1955). The operator of a motor vehicle in such a situation is required to exercise reasonable care, that is, such care as the existing conditions require, and to have her vehicle under such control as to be able to stop, if necessary, to avoid harm to others on the highway. Osbun v. DeYoung, 99 N.J.L. 204, 208 (E. & A. 1923); McGowan v. Barry, 210 N.J. Super. 469, 473 (App.Div. 1986); Greenfield v. *171 Dusseault, 60 N.J. Super. 436, 441 (App.Div. 1960), aff'd 33 N.J. 78 (1960); Levine v. Scaglione, 95 N.J. Super. 338, 341 (App. Div. 1967). See also Model Civil Charge, Negligence, § 5.18(G)4.
We have canvassed the record in this case, and considered the judge's reasons for setting aside the verdict. No sound basis exists for disturbing the jury's findings and conclusions relating to plaintiff's negligence. Our review of the record satisfies us that the jury could properly have concluded that plaintiff was partially at fault in the situation presented. See Beck v. Washington, 149 N.J. Super. 569, 572 (App.Div. 1977). Accordingly, the trial judge erred in setting aside the jury's determination that plaintiff was 40% negligent.

II
Plaintiffs' alternative argument is that any reduction of the jury award by virtue of negligence on plaintiff's part should not apply to her husband's per quod award, relying on Tornquist v. Perkowski, 208 N.J. Super. 88, 107 (Law Div. 1984). We disagree, and to the extent that Tornquist is inconsistent with our opinion, we now overrule it. Tornquist considered, but was unable to harmonize, the acknowledged "derivative" nature of a per quod claim with characterization of such a claim as "separate" and "independent." Id. at 96-97. Even though loss of consortium may be separate and independent (in the sense of distinct) as an element of a damage claim, it is still derivative and dependent on the degree of negligence of the spouse asserting the personal injury claims.
The judge in Tornquist relied in part on Orr v. Orr, 36 N.J. 236 (1961). A claim for medical expenses and loss of services had been asserted in Orr by the father of the non-negligent[3] injured motor vehicle passenger against the defendant driver. The driver married the injured daughter before the suit came on for trial. Although the passenger was barred from suing *172 her new husband by the former prohibition against inter-spousal suits, the Orr court held that the father's claim was not affected.
In our view, the Orr case does not require a conclusion that a per quod claim of a spouse should not be affected or proportionately reduced by the negligence of the other spouse or by the negligence of the spouse asserting the per quod claim. Indeed, to hold otherwise has the potential of allowing a defendant contribution against the negligent spouse on a consortium claim. Cf. Lantis v. Condon, 95 Cal. App.3d 152, 156, 157 Cal. Rptr. 22, 24 (1979). Furthermore, it could also be argued that if a loss of consortium claim is not derivative, one spouse might be able to sue the other spouse for loss of consortium due to the other spouse's negligence in becoming injured whether or not another tortfeasor was involved. Such a result would clearly be incongruous and one not contemplated by our law.
We also note that Schwartz v. City of Milwaukee, 54 Wis.2d 286, 195 N.W.2d 480 (1972),[4] a case relied on in Tornquist (id., 208 N.J. Super. at 101), has been held inapplicable to the instant issue. The Wisconsin Supreme Court has determined that under that state's statute the injured spouse's negligence limits the recovery of the spouse claiming per quod damages (whether medical expenses or loss of consortium). White v. Lunder, 66 Wis.2d 563, 574, 225 N.W.2d 442, 449 (1975) (discussing and distinguishing Schwartz). See Arnold v. Shawano County Agr. Soc., 111 Wis.2d 203, 330 N.W.2d 773, 779 (1983).
*173 A per quod claim is only maintainable by reason of a spouse's personal injury. It depends upon and is incidental to the personal injury action. Rex v. Hutner, 26 N.J. 489, 492 (1958). Our courts have characterized it as a derivative claim, not a separate cause of action. See Orr v. Orr, 36 N.J. 236 (1961); Wimmer v. Coombs, 198 N.J. Super. 184, 188 (App.Div. 1985); Boyd v. Steele, 107 N.J. Super. 405, 410 (App.Div. 1969); Neely v. Kossove, 198 N.J. Super. 503, 505 (Law Div. 1984); Scolaro v. Marlatt, 193 N.J. Super. 452 (Law Div. 1983). Such claims must be joined with the primary claim in a single action. R. 4:28-3. See Richardson v. Kulick, 213 N.J. Super. 250, 254 (App.Div. 1986). The derivative claim can rise no higher than the personal injury claim of the other spouse.[5]See Prosser & Keaton on Torts (5th Ed. 1984) § 125 at 938.
Formerly a husband was considered liable for his wife's medical expenses and necessaries. Thus, as the late Chief Justice Weintraub observed in Patusco v. Prince Macaroni, Inc., 50 N.J. 365, 369 (1967), at common law a wife's claim for medical expenses had been commonly lumped with the husband's per quod loss of consortium claim.[6] The husband (the driver) and wife (the passenger) in that case were both injured in a rear-end collision. The court recognized two distinct claims and held that under the Married Women's Act the wife's cause of action as a non-negligent injured plaintiff for medical expenses she incurred belonged to her and was not barred by any contributory negligence of her husband. The court discussed *174 the effect of the injured spouse's negligence on the per quod claim of the other spouse:
Although the husband's consortium claim is thus distinct from the wife's, it will fall if the wife was contributorily negligent. It will also fall if the husband himself was negligent. That the wife's carelessness should bar the husband's claim for loss of consortium is questioned academically, see Orr v. Orr, 36 N.J. 236, 239 (1961), but as to the husband's own negligence it is correct to say upon current notions of liability that the husband ought not to recover if he himself negligently contributed to that loss. (50 N.J. at 368) (Emphasis supplied.)
We see no reason to depart from this rule in a comparative negligence setting. While criticism of this rule has been acknowledged, ibid.; see also Orr v. Orr, 36 N.J. 236, 239 (1961), we note that any perceived harshness of barring a consortium claim based on negligence of the injured spouse has been mitigated by the legislature's adoption of a comparative negligence approach. N.J.S.A. 2A:15-5.1 (L. 1973, c. 146, § 1. Amended by L. 1982, c. 191, § 1, eff. December 6, 1982). See Eggert v. Working, 599 P.2d 1389, 1390-1391 (Alaska 1979). A per quod award will thus be reduced by the percentage of negligence attributable to the injured spouse, and by the percentage of any negligence attributable to the spouse asserting the per quod claim.[7]
There is a split of authority on this issue among our sister states, see Prosser and Keaton on Torts, supra, § 125 at 937-938; Annotation, "Negligence of spouse or child as barring or reducing recovery for loss of consortium by other spouse or parent," 25 A.L.R. 4th 118, 125-134 (1983). Our holding is consonant with the majority of jurisdictions considering this issue. See Mayo v. Tri-Bell Industries, Inc., 787 F.2d 1007, 1011-1012 (5th Cir.1986) (applying Texas law and approving *175 majority view that loss of consortium action is a derivative, not separate, cause of action, and thus an injured party's negligence reduces a per quod award). See also Runcorn v. Shearer Lumber Products, Inc., 107 Idaho 389, 394, 690 P.2d 324, 329 (1984), where the court said:
We agree with the majority [of jurisdictions considering the issue under comparative negligence statutes]. The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse.
And see Scattaregia v. Shin Shen Wu, 343 Pa.Super. 452, 495 A.2d 552, 553 (1985) (following majority view that comparative negligence of injured spouse reduces other spouse's loss of consortium award). Accord Jorae v. Clinton Crop Service, 465 F. Supp. 952, 957 (E.D.Mich. 1979) (applying Michigan law); Ferguson v. Ben M. Hogan Co., 307 F. Supp. 658, 665 (W.D. Ark. 1969) (applying Arkansas law); Nelson v. Busby, 246 Ark. 247, 437 S.W.2d 799, 803 (1969); Hamm v. City of Milton, 358 So.2d 121, 123 (Fla. Dist. Ct. App. 1978); White v. Lunder, supra (225 N.W.2d 442); Weaver v. Mitchell, 715 P.2d 1361, 1369 (Wyo. 1986). Cf. Annotation, "Contributory negligence of spouse or child as bar to recovery of collateral damages suffered by other spouse or parent," 21 A.L.R.3d 469 (1968).
Cases holding to the contrary characterize a per quod claim as independent[8] and not subject to any defenses available against the injured spouse. For instance, in Macon v. Seaward Constr. Co., Inc., 555 F.2d 1, 2-3 (1st Cir.1977), the federal court applied New Hampshire law in declining to reduce the wife's recovery for loss of consortium in proportion to her husband's comparative negligence. However, the court observed: *176 "We do not reach this result with positive assurance." Lantis v. Condon, supra (157 Cal. Rptr. at 23) (based on a 1968 California statute abolishing "the defense of imputed contributory negligence") and Feltch v. General Rental Co., 383 Mass. 603, 421 N.E.2d 67 (1981) also apply the minority view. See also Christie v. Maxwell, 40 Wash. App. 40, 696 P.2d 1256 (1985) (acknowledging, however, while interpreting a statutory provision, unfairness of allowing plaintiff wife 100% recovery on her consortium claim where husband was 62.5% negligent).
We agree with the majority view. Loss of consortium is a derivative claim for purposes of comparative negligence. Reducing a per quod claim by the amount of negligence of the injured spouse is the "simplest and most efficient way to reach a just result." Lee v. Colorado Dept. of Health, 718 P.2d 221, 232 (Colo. 1986). See also Maidman v. Stagg, 82 A.D.2d 299, 305, 441 N.Y.S.2d 711, 715 (1981):
We find ourselves unable to agree with the analysis put forward by Prosser and Harper & James, and the courts in Lantis, supra and Macon, supra. The New York courts have never recognized an `independent' claim for consortium (Liff v. Schildkrout, 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288, supra), and we see no persuasive reason why they should do so. The consortium claim and the principal personal injury claim are closely interconnected; together, they represent the total, compensable damages  direct and indirect  suffered as a result of the principal plaintiff's injury. Viewed in this light, it makes little sense to hold that an injured party's negligence would bar or limit his recovery for a direct injury, but would not affect his spouse's recovery for an indirect injury.
In summary, we hold that a per quod award is to be reduced by the amount of negligence attributable to the claimant's spouse. Any other result would "surely create liability in excess of the defendant's fault." Portee v. Jaffee (supra 84 N.J. at 102).
The determination of the trial judge setting aside the jury verdict with respect to plaintiff's negligence is reversed and the matter is remanded for reinstatement of the original jury verdict and judgments as molded.
NOTES
[1] The jury awarded $2,500 to plaintiff Geraldine Tichenor on her personal injury claim and a like amount on her husband's per quod claim.
[2] Plaintiff in the singular form refers to Geraldine Tichenor.
[3] The result might have been different if the daughter had been negligent.
[4] Schwartz was a declaratory judgment action arising out of the settlement of a negligence action. It concerned statutory liability limits on recovery allowable against a municipal corporation. The settlement with the injured wife essentially exhausted the $25,000 limit. The husband's claims for medical expenses and loss of consortium (stipulated as $8,000 for settlement purposes) were held not barred by the exhaustion of the limit in settling the wife's claim, but were treated as a separate claim. No negligence of either spouse was involved, although the Schwartz court observed: "A cause of action for loss of consortium is, of course, subject to the defense of contributory negligence of the owner of the cause of action." 195 N.W.2d at 484.
[5] This proposition was referred to in Ferguson v. Ben M. Hogan Co., 307 F. Supp. 658, 665 (W.D.Ark. 1969); Nelson v. Busby, 246 Ark. 247, 437 S.W.2d 799, 803 (1969); Scattaregia v. Shin Shen Wu, 343 Pa.Super. 452, 495 A.2d 552, 553 (1985). See also Rex v. Hutner, 26 N.J. 489, 490 (1958).
[6] Under then existing law, a wife was precluded from suing her husband as a tort-feasor. 50 N.J. at 368-369. This doctrine was abrogated in motor vehicle cases by Immer v. Risko, 56 N.J. 482 (1970). See also Merenoff v. Merenoff, 76 N.J. 535 (1978).
[7] In Portee v. Jaffee, 84 N.J. 88 (1980), a case involving a claim for emotional distress based on a mother's observation of her son's death, our Supreme Court likewise held that the mother's recovery would be reduced by the percentage of negligence of the son, as well as by the percentage of negligence of the mother. The court noted that an action for loss of consortium may be perceived as a claim for negligently inflicted emotional injury. Id. at 98 n. 6.
[8] In our view it is "independent" only in the sense that it constitutes a separate element of a damage claim by the spouse claiming loss of consortium. Thus, in certain circumstances a spouse may bring an action for loss of consortium though her injured spouse's personal injury claim is settled. See Richardson v. Kulick, 213 N.J. Super. 250 (App.Div. 1986); Neely v. Kossove, 198 N.J. Super. 503, 505-506 (Law Div. 1984). As a general rule, however, we view a loss of consortium claim as dependent upon and derivative of the other spouse's negligence claim.