817 A.2d 426 (2003)
358 N.J. Super. 254
Joseph Dello RUSSO, M.D., Joseph Dello Russo, M.D., P.A., t/a New Jersey Eye Center, Medical Care, P.L.L.C., d/b/a Dello Russo Laser Vision, a foreign Corporation and Stephanie Dello Russo, Plaintiffs-Appellants,
v.
Bruce H. NAGEL, Esq., Jay J. Rice, Esq., David A. Mazie, Esq., Joanne M. Bonacci, Esq., Robert D. Solomon, Esq., Adam Slater, Esq., Individually, and Nagel, Rice, Dreifuss & Mazie, L.L.P., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 2003.
Decided March 12, 2003.
*429 Richard D. Koppenaal argued the cause for appellants.
Elliott Abrutyn argued the cause for respondents (Morgan Melhuish Monaghan Arvidson Abrutyn & Lisowski, attorneys; Mr. Abrutyn and Warren Usdin, on the brief).
Before Judges PETRELLA, BRAITHWAITE and LINTNER. *427
*428 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs Joseph Dello Russo, M.D., Joseph Dello Russo, M.D., P.A., t/a New Jersey Eye Care Center, Medical Care, P.L.L.C., d/b/a Dello Russo Laser Vision, and Stephanie Dello Russo, filed an appeal of a February 2, 2002 order granting summary judgment to defendants and dismissing their complaint. Their motion for reconsideration was denied. The claims brought by plaintiffs against defendants, the law firm of Nagel, Rice, Dreifuss & *430 Mazie, L.L.P., and its principals, alleged that the defendants orchestrated a campaign to destroy the good name and medical practice of Dr. Dello Russo. The complaint alleged defamation, extortion, attempted harmful actions, and tortious interference with plaintiffs' contract and business opportunity. Dr. Dello Russo's wife, Stephanie Dello Russo, also alleged negligent infliction of emotional distress. A per quod claim was then asserted on behalf of Dr. Dello Russo based on the asserted emotional distress suffered by his wife.
On appeal plaintiffs argue that the motion judge erred: (1) in dismissing their complaint because a cause of action upon which relief may be granted was pled; (2) when he found that defendants' defamatory statements were not actionable and were subject to privilege because the advertisement placed by the respondents was defamatory; (3) in determining, as a matter of law, that defendants' actions did not constitute an actionable claim for tortious interference with plaintiffs' contract and business opportunity; (4) in dismissing Stephanie Dello Russo's complaint based upon negligent infliction of emotional distress; and (5) in dismissing Joseph Dello Russo's per quod claim which relied on his wife's claims.
Between March and November 2001, the law firm of Nagel Rice Dreifuss & Mazie, filed four separate civil lawsuits against Dr. Dello Russo. The first two cases, DeAngelis v. New Jersey Eye Center, et al., and Cucopulis v. New Jersey Eye Center, et al., alleged: (1) negligent medical care in connection with laser eye surgery, and (2) fraud and battery arising from post-operative care provided by William T. Kellogg when his medical license was revoked. The third case, Dell'ermo v. NJ Eye Center, et al., asserted medical malpractice arising out of the performance of laser surgery on a man who was an inappropriate candidate. The fourth case was Macedo v. NJ Eye Center, et al. which sought class action status on behalf of all persons claiming improper treatment by Kellogg, who was asserted to be an unlicensed doctor who was allegedly held out by Dr. Dello Russo to be a physician.
According to the record of this appeal, at a meeting at the Nagel firm, Dr. Dello Russo's attorney offered defendants $2 million, provided, among other things, that the firm would agree not to sue Dr. Dello Russo in the future. That offer was rejected. Plaintiffs contend that Bruce Nagel demanded $3 million from Dr. Dello Russo personally to make matters go away. Dr. Dello Russo asserted that Nagel allegedly threatened that if he did not comply, Nagel would go public, contact the media, call a press conference and also place an ad in the newspapers. Dr. Dello Russo refused his demands.
On August 1, 2001, the defendant law firm ran a newspaper advertisement for the purposes of soliciting potential claimants who might have complaints against Dr. Dello Russo. The advertisement asked whether readers were "treated by Dr. Dello Russo or Dr. William Kellogg at the NJ Eye Center," and whether they "suffered a bad result from eye surgery," and if so, defendants offered a "free consultation to discuss your legal rights."
After this newspaper advertisement was published, Dr. Dello Russo sought injunctive relief against the law firm and sought to prevent it from interviewing potential witnesses in connection with the four pending lawsuits instituted on behalf of the firm's clients against Dr. Dello Russo and his business. This application was denied and the action was dismissed for failure to state a legally cognizable claim.
Dr. Dello Russo contends that the result of this publication had an immediate and *431 continuing impact on his medical practice and his reputation. He asserts that many of his patients canceled their surgeries and his office suffered a significant drop-off in new patients, and that defendants contacted several of his patients seeking information regarding their treatment.

I.
A motion to dismiss for failure to state a claim under R. 4:6-2(e) is granted with great caution. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 771-772, 563 A.2d 31 (1989); Leon v. Rite Aid Corp., 340 N.J.Super. 462, 466, 774 A.2d 674 (App.Div.2001). The test is whether a cause of action is suggested by the facts alleged in the complaint.
The first, second, third, and fifth counts of the verified complaint were predicated on claims that plaintiffs were defamed. Whether a statement is defamatory is a matter of law to be determined by the court. Higgins v. Pascack Valley Hosp., 158 N.J. 404, 426, 730 A.2d 327 (1999). To establish a prima facie case of defamation, whether denominated libel or slander, a plaintiff must show that defendant communicated a false statement about plaintiff to a third person that harms plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff. Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-165, 735 A.2d 1129 (1999). Plaintiffs' burden of proof for each of the elements of defamation is by clear and convincing evidence. Rocci v. Ecole Secondaire MacDonald-Cartier, 165 N.J. 149, 159, 755 A.2d 583 (2000); Lynch, supra (161 N.J. at 165, 735 A.2d 1129).
When determining if a statement is defamatory on its face "a court must scrutinize the language `according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence.'" Ibid. (quoting Romaine v. Kallinger, 109 N.J. 282, 290, 537 A.2d 284 (1988)). The threshold issue is whether the language used is reasonably susceptible of a defamatory meaning. Decker v. Princeton Packet, 116 N.J. 418, 424, 561 A.2d 1122 (1989); Romaine, supra (109 N.J. at 290-291, 537 A.2d 284); Kotlikoff v. The Cmty. News, 89 N.J. 62, 67, 444 A.2d 1086 (1982). If the statement is susceptible of only a non-defamatory meaning, it cannot be considered defamatory, and the complaint must be dismissed. Romaine, supra (109 N.J. at 290, 537 A.2d 284). However, where the statement is capable of more than one meaning, one of which is defamatory and another not, the question of whether its content is defamatory must be resolved by the fact finder. Id. at 290-291, 537 A.2d 284.
In deciding whether a statement is defamatory a court examines its content, verifiability, and context. Id. at 167, 735 A.2d 1129; Ward v. Zelikovsky, 136 N.J. 516, 529, 643 A.2d 972 (1994). A statement's content is judged by its objective meaning to a reasonable person of ordinary intelligence. Lynch, supra (161 N.J. at 167-168, 735 A.2d 1129). Secondly, only verifiable statements can be defamatory. Ibid.; Ward, supra (136 N.J. at 530-531, 643 A.2d 972). Finally, a statement's meaning can be affected by its context. Lynch, supra (161 N.J. at 168, 735 A.2d 1129). The focus is on the effect of the alleged defamatory statement on third persons, that is, whether they viewed the plaintiff in a lesser light as a result of hearing or reading the offending statement. Arturi v. Tiebie, 73 N.J.Super. 217, 223, 179 A.2d 539 (App.Div.1962); Scelfo v. Rutgers Univ., 116 N.J.Super. 403, 411, 282 A.2d 445 (Law Div.1971).
Plaintiffs argue that the newspaper advertisement placed by defendants *432 is actionable because of the use of the language "bad result" in the advertisement. As noted, the advertisement consisted of questions and an offer to consult with potential clients. Although attorneys are constitutionally and ethically permitted to advertise,[1] plaintiffs contend that the use of the language "bad result" is not a communication of factual information by the defendants' law firm that is permitted in attorney advertising. Plaintiffs contend that the advertisement sends the message that Dr. Dello Russo conducts such bad surgery that his patients should sue him. Dr. Dello Russo argues that an acceptable advertisement would have to mention the total number of his successful surgeries.
Plaintiffs rely on Mick v. American Dental Assoc., 49 N.J.Super. 262, 139 A.2d 570 (App.Div.), certif. denied, 27 N.J. 74, 141 A.2d 318 (1958), where we sustained the dismissal of a libel action brought against the American Dental Association by a member-dentist who opposed fluoridation of public drinking water. Thereafter, the Association responded to an inquiry about the dentist by stating it believed his views "to be based on complete misinformation and to be totally irresponsible." Id. at 271, 139 A.2d 570. We commented that the letter was not so unambiguous that a court could hold as a matter of law that it was capable only of the non-defamatory interpretation that there was no attack on the plaintiff's ability or competence as a dentist. Readers of the publication could have lessened esteem for a dentist whose views on fluoridation were "irresponsible," with the implication that his professional reputation would suffer. Id. at 275, 139 A.2d 570. However, the defamation action based on the letter was barred as to the addressee of the letter on the theory of invitation or consent. Id. at 276, 139 A.2d 570.
Plaintiffs' reliance on Mick is misplaced because there was ambiguity as to whether the allegedly defamatory statements in that case were in fact defamatory. Here, the advertisement does not state that Dr. Dello Russo is incompetent or that he has a history of bad results. Rather, it asks whether patients who had been treated at the New Jersey Eye Center by either Dr. Dello Russo or Kellogg suffered a bad result. The motion judge reasoned that the term "bad" used by defendants was not significant because the defendants were trying to limit the patients who contacted them to those who experienced unfavorable results. We agree. The judge properly concluded that defendants' advertisement was not defamatory.
Plaintiffs also contend that they were defamed by statements made by defendants in a settlement meeting. Plaintiffs' complaint does not refer to specific statements, but presumably they refer to defendants' threat during the settlement conference to go public if Dr. Dello Russo did not settle. Generally, however, the litigation privilege protects a litigant from liability for statements made in the course of judicial, administrative, or legislative proceedings by a litigant or other trial participant. Erickson v. Marsh & McLennan *433 Co., Inc., 117 N.J. 539, 563, 569 A.2d 793 (1990) (citing Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 558, 117 A.2d 889 (1955)). The litigation privilege extends to "`any communication (1) made in judicial and quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" Hawkins v. Harris, 141 N.J. 207, 216, 661 A.2d 284 (1995) (quoting Silberg v. Anderson, 50 Cal.3d 205, 266 Cal. Rptr. 638, 786 P.2d 365, 369 (1990)). Thus, provided the communication has a nexus with the litigation, it would be privileged. Indeed, it covers statements made during settlement negotiations or while engaged in a private conference with an attorney regarding litigation. Ibid. It would not, for example, properly apply to a threat of criminal prosecution unless some concession is made.
The litigation privilege is not absolute. For example, it does not insulate a litigant from liability for malicious prosecution. Rainer's Dairies, supra (19 N.J. at 564-566, 117 A.2d 889). Nor does it protect against professional discipline for an attorney's unethical conduct. Ruberton v. Gabage, 280 N.J.Super. 125, 134, 654 A.2d 1002 (App.Div.), certif. denied, 142 N.J. 451, 663 A.2d 1358 (1995). "The potential harm which may result from an absolute privilege is mitigated by the comprehensive control of the trial judge and the rules of professional conduct which govern attorney conduct." Peterson v. Ballard, 292 N.J.Super. 575, 588, 679 A.2d 657 (App.Div.1996) (citing Hawkins, supra (141 N.J. 207, 661 A.2d 284)). See also R.P.C. 3.4(g).
In Ruberton, supra (280 N.J.Super. at 133-134, 654 A.2d 1002), in the context of an abuse of process case, we held that threats of criminal prosecution made by an attorney during a settlement conference, even if tortious, were protected by the litigation privilege. We reasoned that "during such conferences an attorney must be free to advance the strengths of his or her client's case in a candid and objective way, unfettered by the fear that the attorney may be the subject of a tort action, whether sounding in defamation or any other `action under a different label.'" Id. at 133-134, 654 A.2d 1002 (quoting Rainier's Dairies, supra (19 N.J. at 564, 117 A.2d 889)). However, we would not necessarily apply Ruberton to all threats of criminal prosecution made by an attorney.
The motion judge held that the statements that were made in the settlement meeting did not constitute defamation, and rejected plaintiffs' arguments. Here, the judge properly ruled that defendants' statements during the settlement negotiations were protected by the litigation privilege.

II.
The sixth count of the verified complaint alleged the crime of theft by extortion. N.J.S.A. 2C:20-5 provides that a person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion. In pertinent part, a person extorts if he purposely threatens to:

....
b. Accuse anyone of an offense or cause charges of an offense to be instituted against any person;
c. Expose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;

*434 ....
g. Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.
Defendants respond that as a matter of law, there is no civil cause of action for theft by extortion and the criminal statute does not provide a civil remedy. Defendants are correct in their assertion. The motion judge properly dismissed plaintiffs' claims because there is no civil cause of action for theft by extortion. In any event, the record does not establish the elements of extortion.
The fourth count of plaintiffs' complaint alleged that defendants committed a wrongful act when they "attempted to contact and in fact directly contacted and solicited current and former patients of plaintiffs in an attempt to have such patients discuss their medical treatment with defendants." It is hardly clear exactly what cause of action plaintiffs allege in this count. In any event, the judge correctly dismissed this count because no cause of action was identified or suggested by the facts in this count of the complaint. See Printing Mart, supra (116 N.J. at 746, 563 A.2d 31).

III.
The third count of plaintiffs' complaint alleged that defendants' defamatory statement was an act of tortious interference with plaintiffs' prospective economic opportunity and business interests. The fourth count also alleged that defendants contacted plaintiffs' patients and during those contacts defamed plaintiff which was an act of tortious interference with plaintiffs' contract. Plaintiffs claim that the motion judge erred in dismissing those counts of their complaint.
To establish a claim for tortious interference with contractual relations, a plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage. 214 Corp. v. Casino Reinvestment Dev. Auth., 280 N.J.Super. 624, 628, 656 A.2d 70 (Law Div.1994) (citing Printing Mart, supra (116 N.J. at 751-752, 563 A.2d 31)).
Interference with a contract is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) Torts, § 766A, comment e (1977). "An individual acts with malice when he or she intentionally commits a wrong without excuse or justification." Cox v. Simon, 278 N.J.Super. 419, 433, 651 A.2d 476 (App.Div.1995). However, the fact that a breaching party acted "to advance [its] own interest and financial position" does not establish the necessary malice or wrongful conduct. Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J.Super. 437, 451-452, 358 A.2d 805 (App.Div.), certif. denied, 71 N.J. 503, 366 A.2d 658 (1976). A claim for tortious interference with the performance of a contract must be based, in part, on
facts claiming that the interference was done intentionally and with `malice.'... For purposes of this tort, `[t]he term malice is not used in the literal sense requiring ill will toward plaintiff.' ... Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse.

Printing Mart, supra (116 N.J. at 751, 563 A.2d 31) (citations omitted).
Defendants argue that the complaint was properly dismissed because it *435 failed to identify specific words of defamation which led to tortious interference. In order to properly plead a claim for libel or slander the defamatory words must be identified. Zoneraich v. Overlook Hospital, 212 N.J.Super. 83, 514 A.2d 53 (App. Div.), certif. denied, 107 N.J. 32, 526 A.2d 126 (1986); Lands v. Baseman, 200 N.J.Super. 247, 491 A.2d 47 (App.Div.), certif. denied, 101 N.J. 281, 501 A.2d 945 (1985). Here, we are satisfied that the motion judge properly dismissed this count of the complaint because it failed to identify any defamatory statements that were allegedly made to Dr. Dello Russo's patients.

IV.
The seventh and eight counts of the complaint sought damages for emotional distress for Dr. Dello Russo's wife, Stephanie Dello Russo, and a per quod claim on behalf of Dr. Dello Russo for the emotional distress suffered by his wife. The defendants argue that Stephanie Dello Russo cannot prove the elements of her emotional distress claim.
The tort of negligent infliction of emotional distress "can be understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." Decker v. Princeton Packet, 116 N.J. 418, 429, 561 A.2d 1122 (1989). Thus, under a basic negligence analysis, the elements of the tort of negligent infliction of emotional distress are: (a) defendant owed a duty of reasonable care to plaintiff; (b) defendant breached that duty; (c) plaintiff suffered severe emotional distress; and (d) defendant's breach of duty was the proximate cause of the injury. Ibid. Whether the defendant has a duty of care to the plaintiff depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed. Id. at 429, 561 A.2d 1122.
Plaintiffs rely on Tornquist v. Perkowski, 208 N.J.Super. 88, 89, 504 A.2d 1226 (Law Div.1984), in contending that the Dello Russos presented a claim against defendants based upon negligent infliction of emotional distress. However, Tornquist is inapposite. That case addressed comparative fault in the context of a per quod claim and allowed a Portee[2] type claim for a spouse who also had a per quod claim for loss of consortium. Moreover, Tornquist was overruled by Tichenor v. Santillo, 218 N.J.Super. 165, 174, 527 A.2d 78 (App.Div.1987), where we held that a per quod claim will be reduced by the percentage of negligence attributable to the injured spouse, and by the percentage of any negligence attributable to the spouse asserting the per quod claim. Regardless, these cases have nothing to do with extending causes of action for emotional distress injuries.
In the present case, Mrs. Dello Russo's emotional distress claim does not allege, nor do the factual allegations support, a cause of action based on bodily injury or sickness resulting from fright or apprehension of danger. Falzone v. Busch, 45 N.J. 559, 569, 214 A.2d 12 (1965). In addition, because her claim fails, so does Dr. Dello Russo's per quod claim in the eighth count of the complaint. Without a valid claim by Mrs. Dello Russo, he does not have a valid per quod claim. See Rex v. Hutner, 26 N.J. 489, 492, 140 A.2d 753 (1958). As the elements of the tort of negligent infliction of emotional distress have not been met, the motion judge properly dismissed the seventh and eighth counts of the complaint.
Affirmed.
NOTES
[1] The United State Supreme Court has held that a state may not prohibit attorneys from soliciting employment through truthful and non-deceptive advertising, even if it is targeted at a specific group. Zauderer v. Office of Disciplinary Counsel of the Sup.Ct. of Ohio, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). New Jersey permits lawyers to advertise services in newspapers and other periodicals. In re Felmeister & Isaacs, 104 N.J. 515, 519, 518 A.2d 188 (1986); R.P.C. 7.2. However, this advertising must be predominately informational because the public is better served by more information about the legal system in order to know its legal rights and to help it choose a lawyer to enforce those rights. Id. at 516, 524, 518 A.2d 188.
[2] Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980).