**ALD-182**                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1558
_____

MAURICE ASSADOURIAN,
                                                            Appellant

v.

YOUSSEF HARB, a/k/a Joseph Harb d/b/a Planet of Performers, Inc.; AMRO DIAB;
ASHRAF FOUAD, (deceased); ASHRAF FOUAD DECEDENT ESTATE, JOHN DOES
(1 to 25)

YOUSSEF HARB; PLANET OF PERFORMERS, INC.

v.

SUPERIOR MEGA STARS PRODUCTION, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 06-0896)
District Judge:  Honorable Garrett E. Brown, Jr.
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 12, 2011
Before:  SCIRICA, HARDIMAN AND VANASKIE, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  June 2, 2011)
_____

OPINION
_____

PER CURIAM

Pro se appellant Maurice Assadourian appeals the District Court's orders granting summary judgment to the defendants. We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). Because this appeal presents no substantial question, we will summarily affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

The underlying factual allegations in this case are relatively straightforward. Assadourian is an entertainment promoter. He sought to sign defendant Amro Diab, a popular Egyptian singer, to perform in the United States and Canada, and to this end, negotiated with Diab's then-agent, Ashraf Fouad (who is now deceased), throughout 2004 and 2005. Assadourian claims that he and Fouad reached an oral agreement in April 2005; however, in September 2005, Diab signed a written contract with a rival promoter, defendant Youssef Harb, and ultimately performed in North America under that contract.

Assadourian filed a pro se complaint in which he alleged that Harb had tortiously interfered with his prospective contract with Diab and engaged in unlawful business practices, and that Harb and Diab had engaged in an unlawful conspiracy. Assadourian then amended his complaint twice, retained counsel, and amended the complaint a third time. In the third amended complaint, he added claims alleging breach of contract and tortious interference with an existing contract. On January 3, 2008, Assadourian sought

2

permission to file a fourth amended complaint; the District Court denied his request.

Throughout this period, Assadourian was attempting, over Diab's objection, to take Diab's deposition. Ultimately, the parties agreed that the deposition would go forward in Egypt. However, the day before the deposition was scheduled to be held, Assadourian canceled it. Three months later — and well after the close of discovery — Assadourian moved to reopen the discovery period so that he could reschedule the deposition. The magistrate judge denied the motion, concluding that Assadourian had failed to show good cause for his untimely request.

Subsequently, in separate orders, the District Court granted summary judgment to the defendants on Assadourian's claims of breach of contract and tortious interference with a contract, and then his claims of tortious interference with a prospective economic relationship and conspiracy. Assadourian filed a timely appeal to this Court.

As an initial matter, Assadourian challenges two of the District Court's procedural rulings. First, he argues that the District Court erred in ordering that the deposition of Diab proceed in Egypt rather than the United States. However, a review of the proceedings reveals that this arrangement was actually Assadourian's idea. For instance, in a November 15, 2007 motion, Assadourian stated, "Plaintiff stands ready to take Mr. Diab's deposition in any part of the world that would be more convenient to Mr. Diab, including Europe or the Middle East." In a December 20, 2007 hearing, the magistrate judge ordered that the deposition proceed in Egypt; Diab's counsel objected, because he believed that the deposition represented nothing more than an attempt to harass a famous

performer, but Assadourian's counsel appeared to be fully satisfied by the ruling —

Assadourian neither objected before the magistrate judge nor appealed the decision to the

District Court. Assadourian cannot now challenge an order that he not only did not

appeal to the District Court, but actually proposed. See, e.g., Cont'l Cas. Co. v.

Dominick D'Andrea, Inc., 150 F.3d 245, 252 (3d Cir. 1998).[1]

Assadourian's second procedural challenge concerns the District Court's order

that denied his motion to file a fourth amended complaint. We conclude that, regardless

of whether we apply Fed. R. Civ. P. 15(a), which provides that leave to amend should be

granted "when justice so requires," or Rule 16(b), which requires a party to show "good

cause" before a court will modify a scheduling order (Assadourian filed his motion to

amend almost six months past the deadline set by the Court's scheduling order), the

District Court acted within its discretion in denying Assadourian's motion. See E.

Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000). At the outset, it

bears emphasizing that this represented Assadourian's effort to amend his complaint for a

fourth time. Moreover, the proposed amendment — which would have added a claim

under the Racketeer Influenced and Corrupt Organizations Act — was based on

documents that Assadourian possessed even before he amended his complaint the third

time; it was thus proper for the District Court to conclude that Assadourian had not acted

---

[1] Nor did Assadourian appeal to the District Court the magistrate judge's later order denying his motion to reopen the discovery period. We therefore conclude that he has likewise waived any objection to that order. See GMC v. New A.C. Chevrolet, 263 F.3d 296, 336 n.25 (3d Cir. 2001).

4

diligently and that it would unfairly prejudice the defendants to inject a new theory into the case at such a late date.  See, e.g., Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 84 (3d Cir. 2010).

We will likewise affirm the District Court's orders on the merits.  First, we agree with the District Court that the defendants were entitled to summary judgment on Assadourian's breach-of-contract claim.  While New Jersey recognizes the validity of oral contracts, see, e.g., McBarron v. Kipling Woods L.L.C., 838 A.2d 490, 491 (N.J. Super. Ct. App. Div. 2004), any contract "must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty," Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284  (N.J. 1992) (internal quotation marks omitted).  Here, by Assadourian's own testimony, the parties had agreed to little more than the amount that Diab demanded to be paid per show; they had not agreed to the manner or time of payment, the venues in which the shows would be held, or even the cities that would be included on the tour.  Thus, while Diab's compensation was allegedly fixed, "[a]ll of the other terms normal to an obligation of this magnitude were missing." Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 395 A.2d 222, 228 (N.J. Super. Ct. App. Div. 1978).  The District Court was therefore correct to hold that the parties had not entered into an enforceable contract.  See Baer v. Chase, 392 F.3d 609, 621 (3d Cir. 2004).

In light of this holding, Assadourian's claim that Harb tortiously interfered with Assadourian and Diab's existing contractual relationship must also fail.  See Dello Russo

5

v. Nagel, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div. 2003) (explaining that "[t]o establish a claim for tortious interference with contractual relations, a plaintiff must prove . . . actual interference with a contract").

Assadourian's claim of tortious interference with a prospective contractual relationship fares no better. To establish this claim, Assadourian must show, among other things, that he had a reasonable expectation of economic benefit, that Harb had knowledge of that expectancy, and that Harb wrongfully and intentionally interfered with that expectancy. See Lightning Lube v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993). We agree with the District Court that Assadourian has failed to make the required showing. Assadourian has claimed that Harb violated United States and New Jersey tax laws in 2000 or 2001. However, he has presented no evidence to link that alleged misconduct to the contract that Harb and Diab executed in 2005. The only evidence concerning that transaction shows that Harb traveled to Egypt to meet with Diab on numerous occasions — something that Assadourian never did — and eventually persuaded Diab to accept his offer. On this record, the District Court was correct to grant judgment to the defendants. See, e.g., Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 41 (N.J. 1989) (explaining that "when a plaintiff's loss of business is a mere incident of competition, it is damnum absque injuria" (internal quotation marks omitted)).

Finally, Assadourian claimed that Harb and Diab engaged in a civil conspiracy. However, his failure to show that the defendants committed an underlying tort is fatal to his conspiracy claim. See Tynan v. GMC, 591 A.2d 1024, 1032 (N.J. Super. Ct. App.

6

Div. 1991), <u>rev'd in part on other grounds</u>, 604 A.2d 99 (N.J. 1992).

Accordingly, we conclude that there is no substantial question presented by this appeal, and will thus summarily affirm the District Court's orders granting summary judgment to all defendants.  <u>See</u> 3d Cir. L.A.R. 27.4; I.O.P. 10.6.