**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1138-24

STEVEN D'AGOSTINO, in his
official capacity as the Webmaster
for the Toms River Chess Club,

     Plaintiff-Appellant,

v.

NICHOLAS CARLSON, in his
official capacity as the President
of the Toms River Chess Club,

     Defendant-Respondent.

_____

Argued March 18, 2026 – Decided April 10, 2026

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000071-24.

Steven D'Agostino, appellant, argued the cause on appellant's behalf.

Leo B. Dubler, III argued the cause for respondent (Leo B. Dubler, III, attorneys; Leo B. Dubler, III, on the brief).

PER CURIAM

Plaintiff Steven D'Agostino appeals from a November 1, 2025 order granting a motion by defendant Nicholas Carlson to dismiss the complaint with prejudice for failure to state a claim pursuant to Rule 4:6-2(e). Perceiving no error in the judge's determination that judicial interference in the affairs of the Toms River Chess Club (the Club) was unwarranted under prevailing decisional law, we affirm.

I.

The Club is a private organization providing a forum for chess players to engage in regularly scheduled, casual games and periodic tournaments. The Club's governing board (the Board) is comprised of six volunteer members. Plaintiff served as the Board's webmaster from February 2018 until July 25, 2024. Defendant has been the Club's president since November 2021.

On August 8, 2024, plaintiff filed a lawsuit seeking declaratory and injunctive relief related to his membership in the Club and defendant's role as Club President. In an amended complaint, plaintiff sought defendant's removal as Club president, asserting defendant lacked the appropriate character due to "his repeated deceit, his repeated manipulative behavior, and his repeated vindictiveness." Plaintiff also asserted defendant had facilitated various

violations of the Club's by-laws, constitution and rules.

Plaintiff alleged defendant had violated the Club's by-laws in 2022 by allowing late registrants to join the Club's championship tournament contrary to the contest rules. Plaintiff asserted a United States Chess Federation representative had informed him defendant should not have permitted those contestants to compete.

Plaintiff further alleged "during a board meeting when [defendant] wanted to change the [C]lub's logo to a new design that he [had] created and he could not get a quorum" for a vote, defendant sought to pursue the issue through a referendum instead. Plaintiff also asserted defendant inappropriately approached two members and joked about their votes on another referendum, which were contrary to defendant's position.

In the amended complaint plaintiff detailed instances when defendant: "engage[d] in discussions about Club business with less than the full board present[]"; misrepresented the Club's finances to the Board and misappropriated Club funds; used an email service "detrimental to the [C]lub[]" to disseminate information; and consistently denied plaintiff's requests to "help the elected treasurer perform his tasks." Plaintiff alleged defendant had not complied with his requests to review a bank statement or financial report issued by the Club's

3

treasurer.

According to plaintiff, when he attempted to serve defendant with the complaint initiating this litigation, defendant responded "emotionally and threw the papers on the floor." After plaintiff was unable to obtain a signed acknowledgement of service from defendant, defendant told Club members about the lawsuit and disseminated a copy of the complaint in a campaign to "taint" plaintiff's reputation.

Plaintiff also alleged defendant had excluded him from various board meetings—through moving meetings to rarely utilized locations and omitting plaintiff from communications regarding meetings—because he and the other board members feared plaintiff. Plaintiff asserted that, instead of attempting to resolve the issues, defendant had referenced his lawsuit at a Board meeting and listed his grievances with plaintiff during his tenure as webmaster, which spawned a verbal altercation at the meeting.

The Board approved defendant's motions to censure plaintiff, remove him as webmaster, require him to return Club property in his possession, "as well as several other things," all in retaliation for filing this lawsuit. Plaintiff alleged his removal violated the Club's by-laws "and prior [B]oard votes on a number of grounds." Plaintiff alleged defendant had implemented a new policy, without

4

approval of the Board, where "if any member is being disruptive or not being positive, that member can be asked to leave early, and if the conduct . . . continue[s], possibly" be subjected to removal from the Club.

Plaintiff also asserted that, after he received late notice of a Board meeting in violation of the Club's by-laws and his Fourteenth Amendment rights, defendant had sent him an August 1, 2024 letter, stating the Board had voted to suspend plaintiff's Club membership indefinitely. Plaintiff alleges he could not run for any vacant Board positions because he was no longer a member in good standing. Further, plaintiff was removed from the Club's mailing list and was advised he would be physically removed by law enforcement if he were to appear at the Club.

In count one, plaintiff sought injunctive relief expelling defendant from the Club, ordering defendant to pay restitution, and compelling defendant to issue plaintiff a written apology. Plaintiff also demanded the order be entered "without prejudice to a Law Division case against [defendant] personally for his defamation and infliction of emotional distress upon [p]laintiff" and state that "[i]f [p]laintiff should bring such a lawsuit, [defendant] shall not be able to obtain coverage or a defense under the [C]lub's insurance policy." In count two, plaintiff sought an order vacating all adverse action taken against him,

5

reinstating him as the Club's webmaster and a member in good standing.

Defendant moved to dismiss plaintiff's amended complaint with prejudice. After hearing argument, the judge entered an order granting the motion pursuant to Rule 4:6-2(e), for the reasons set forth in an oral ruling. The judge found plaintiff had sought "extraordinary relief from the court" through his request for intervention in a private club matter and to "permanently expel the duly elected president of the [C]lub" without first attempting to resolve his issues with the Board or joining the Board as a party.

The judge found the Club was a social organization distinct "from organizations such as professional societies in which the organization's control over a particular profession implicates a need to protect the public welfare." The judge also reasoned judicial intervention was not required under applicable case law because plaintiff had not alleged a civil-rights or public-policy violation. Relying on decisional law, the judge concluded "[e]ven a searching review of" plaintiff's amended complaint failed to "reveal a cause of action" entitling plaintiff to relief. The judge found dismissal with prejudice was appropriate because any further amendment to plaintiff's complaint would be futile.

On appeal, plaintiff argues the judge erred in dismissing his amended complaint with prejudice because he sought to compel defendant to comply with

A-1138-24

the Club's by-laws, which he contends "was essentially an action to compel specific performance of [defendant's] contractual obligations." Plaintiff further argues New Jersey case law supports exercising jurisdiction over social clubs to redress a member's wrongful and bad-faith expulsion from an organization and unilateral amendment of an organization's by-laws. He posits dismissal with prejudice was improper and should have been "without prejudice as to [plaintiff's] monetary claims in the Law Division." Defendant requests we conclude the judge did not err and affirm the order on appeal.

II.

Unconvinced judicial intervention is warranted under prevailing decisional law, we discern no error in the judge's dismissal of plaintiff's complaint with prejudice.

Our review of the judge's order dismissing plaintiff's amended complaint under Rule 4:6-2(e) is de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). "The test is whether a cause of action is suggested by the facts alleged in the complaint." Dello Russo v. Nagel, 358 N.J. Super. 254, 262 (App. Div. 2003). In applying this test, we "examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin, 246 N.J. at 171 (quoting

Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)).

"[A] voluntary association may, without direction or interference by the courts, draw up for its government and adopt rules, regulations and by-laws which will be controlling as to all questions of . . . doctrine or internal policy." Davidovich v. Isr. Ice Skating Fed'n, 446 N.J. Super. 127, 154 (App. Div. 2016) (quoting Loigman v. Trombadore, 228 N.J. Super. 437, 450 (App. Div. 1988)). A private association's discretion regarding its membership decisions is not unfettered. Cipriani Builders, Inc. v. Madden, 389 N.J. Super. 154, 164 (App. Div. 2006). In Davidovich, we synthesized the well-established governing decisional law as follows:

> In evaluating whether judicial intervention into a private association's membership decision is proper, courts are to consider whether a "'plaintiff [has] an interest sufficient to warrant judicial action,' and if such an interest is shown, whether 'that interest [has] been subjected to an unjustifiable interference by the defendant[.]'"
>
> [Davidovich, 446 N.J. Super. at 154 (alterations in original) (quoting Madden, 389 N.J. Super at 165 (quoting Rutledge v. Gulian, 93 N.J. 113, 118 (1983)).]

Our decisional law distinguishes "between membership decisions of private associations whose activities are primarily social or fraternal, such as the

Masons and Elks, and membership decisions of associations whose activities directly affect the economic interests of their members, such as professional societies and trade associations." Madden, 389 N.J. Super. at 165 (citing Falcone v. Middlesex Cnty. Med. Soc'y, 34 N.J. 582, 588-89 (1961)). Judicial intervention may be appropriate where a professional society or trade association exercises "virtually monopolistic control" over a form of economic activity because decisions in those organizations touch on an "individual's opportunity of earning a livelihood and serving society in his chosen trade or profession appear[s] as the controlling policy consideration." Ibid. (alteration in original) (quoting Falcone, 34 N.J. at 590); see also Higgins, 51 N.J. at 198-202 (considering the reinstatement of a member alleged to have been wrongfully expelled from a voluntary, professional association of clinical pathologists). Even absent a showing of economic benefits tethered to an individual's membership, the loss of reputation or status through exclusion from a trade or professional association may warrant judicial review because ostracization may impact career opportunities. Madden, 389 N.J. Super. at 166.

Here, the judge recounted this well-established New Jersey jurisprudence in concluding plaintiff's amended complaint failed to state a cause of action for the "extraordinary relief" plaintiff sought as to the internal operations of a

private, social chess club. We discern no error in the judge's finding that the Club was "clearly a social organization[]" entirely distinct from a professional or trade association, taking plaintiff's private concerns outside the ambit appropriate for judicial intervention.

Nor are we persuaded the judge erroneously concluded plaintiff had failed to show a sufficient interest, contractual or otherwise, to warrant judicial intervention. Cf. Zelenka v. Benevolent & Protective Ord. of Elks, 129 N.J. Super. 379, 382-87 (App. Div. 1974) (holding judicial interference was warranted because the Elks—a social organization—engaged in racial qualifications for membership); Baugh v. Thomas, 56 N.J. 203, 208 (1970) (holding the Chancery Division has jurisdiction "to determine whether established procedures of a religious organization, as proved, have been followed where a member is expelled from that organization"). The judge's determination that judicial relief was inappropriate is supported by the observation that plaintiff failed to seek non-judicial remedies before seeking a court order and did not name the Club as a defendant in the litigation. See Davidovich, 446 N.J. Super. at 154 (citing Dolan v. U.S. Equestrian Team, Inc., 257 N.J. Super. 314, 317-20 (App. Div. 1992); Hernandez v. Overlook Hosp., 149 N.J. 68, 73 (1997)).

We discern no error in the judge's dismissal of plaintiff's complaint with prejudice. Although "[d]ismissals under Rule 4:6-2(e) are ordinarily without prejudice, . . . a dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' or if 'discovery will not give rise to such a claim.'" Mac Prop. Grp. v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987); and then quoting Dimitrakopoulos, 237 N.J. at 107)). Where "it is clear that the complaint states no basis for relief and that discovery would not provide one, dismissal of the complaint is appropriate." Johnson v. City of Hoboken, 476 N.J. Super. 361, 371 (App. Div. 2023) (quoting Sparroween, LLC v. Township of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017)).

Because the allegations pleaded and the relief sought in plaintiff's amended complaint did not present a justiciable issue under our decisional law, the judge did not err in concluding any amendment would be futile. Mac Prop., 473 N.J. Super. at 17. We express no opinion on the viability of any putative complaint that may be subsequently filed.

11

Any arguments we have not addressed, including plaintiff's unsupported allegations of judicial bias, lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division